**Paul CONDON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 12, 1991.
Decided: Sept. 26, 1991.

Jerome M. Capone, Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

CHRISTIE, Chief Justice:

Defendant/appellant Paul E. Condon appeals his convictions in Superior Court on four counts of unlawful sexual intercourse in the first degree. He was convicted as a result of a jury trial in December, 1989 and sentenced to four mandatory terms of life imprisonment. On appeal Condon raises four contentions concerning the conduct of his trial. 1) The trial court erred in permitting the State to present expert testimony relating to characteristics of child sexual abuse victims. 2) The trial court erred by not providing the jury with expanded instructions specific to expert testimony used in child sexual abuse cases. 3) The trial court abused its discretion by permitting two investigating officers to be present in the courtroom and seated at the prosecution table during testimony of other witnesses. 4) The prosecutor asked improper questions and made inaccurate statements which created unfair prejudice against the defendant sufficient to require reversal of his convictions.

Because we find no merit to any of Condon's contentions, we affirm his convictions and sentences.

1. To protect the interests of the victim, she is identified by the pseudonym "Jenny." Supreme

I.

On the evening of January 10, 1989, a mother brought her nine year old daughter, Jenny,[1] to a Wilmington hospital emergency room for treatment of a vaginal discharge. Jenny was diagnosed as suffering from gonorrhea. In conversation with a family friend that evening Jenny disclosed that the appellant, who had lived with the family for over a year, had engaged her in acts of fellatio. She also disclosed that another of her mother's friends had manually molested her. When Jenny's mother learned of these accusations she contacted the Wilmington Police who initiated a criminal investigation. In questioning at police headquarters late that night, the girl did not identify the appellant as having molested her, but did accuse her mother's other friend. The Delaware Division of Child Protective Services and the New Castle County Police Department subsequently initiated separate investigations of Jenny's accusations. The Division of Child Protective Services (DCPS) has responsibility for investigating possible cases of child abuse. The New Castle County Police Department undertook its own criminal investigation because Jenny and her family (along with the appellant) had recently moved to New Castle County from the city of Wilmington. Jenny alleged that the molestations had occurred in the family's residences in both New Castle County and the city of Wilmington.

At her initial interview by a DCPS representative, Jenny reported that she had been molested by four perpetrators, including Condon and two minor boys. Throughout 1989 Jenny was seen periodically by DCPS personnel and was interviewed by Wilmington and New Castle County police investigators. In October, 1989 she named a fifth alleged perpetrator. The three adults whom she named, including Condon, were all indicted on charges resulting from the girl's accusations. Each was tried separately.

Court Rule 7(c).

Because there were no additional eye-witnesses to the alleged molestations, Jenny's credibility was a major issue at Condon's trial. At a conference just before the trial began the State indicated that it intended to present expert testimony on the credibility of victims of child sexual abuse. The defense protested to such a late disclosure of the intended use of expert testimony and the issue was left unresolved. At trial the State did not call the credibility expert which it had named in the pretrial conference.

During the course of the trial, defense counsel objected to the presence at the prosecution table of two investigating police detectives, one from Wilmington and one from New Castle County. The court overruled the objection, as well as another defense objection to the State's mentioning in its opening statement that the case was unique because the alleged crimes had taken place in two jurisdictions, the city of Wilmington and New Castle County. Both investigating detectives gave testimony at trial. The second detective to give testimony was sequestered during the testimony of the first.

Detective John Humphrey of the New Castle County Police was asked by the defense on cross-examination whether he thought that the contention of a nine-year old child was sufficient to bring criminal charges against the defendant. He responded affirmatively and on re-direct the State asked him to establish the basis for this belief. The defense objected to this question, however, the court allowed Detective Humphrey to make a single statement about the general credibility of victims of child sexual abuse and their disclosure tendencies.

Condon testified in his own defense. His counsel objected to two of the questions put to him by the State. The court sustained the defense's objection to a question concerning Condon's history of financial support of his own children. The court allowed a line of questioning concerning Condon's alcohol consumption habits. At the conclusion of testimony the court provided jury instructions including a standard instruction on expert testimony. The defense raised no objections at trial to the jury instructions.

## II.

Condon's first issue on appeal is that the trial court erred by permitting the State to present expert testimony regarding the credibility of child sexual abuse victims. This issue presents us an opportunity for further refinement of the evolving principles governing the use of expert testimony regarding the psychological dynamics and behavioral patterns of complainants in child sexual abuse prosecutions. Here the complainant and appellant were not related. Nevertheless, at the time of the alleged attacks they were residing in the same household. Consequently, this case involving intra-household child sexual abuse is governed by the same principles applicable to intra-family child sexual abuse cases. *See, e.g., Wheat v. State,* Del.Supr., 527 A.2d 269 (1987); *Powell v. State,* Del.Supr., 527 A.2d 276 (1987).

Condon objects to the trial court having allowed a prosecution witness to make the following statement on re-direct examination.

It is more common than not that children will gradually disclose facts in cases. Sometimes they will disclose only partial information, and additional information won't come out sometimes for months. Sometimes even years.

Condon contends that by eliciting this statement from Detective Humphrey the State introduced expert testimony as to the disclosure behavior of victims of child sexual abuse. Condon contends that it was prejudicial error for the court to have allowed this testimony to be admitted without adequate pre-trial notice to the defense.

A trial court has discretion over the admissibility of evidence. On appeal we will not find prejudicial error unless a substantial right of a party has been affected by an evidentiary ruling. D.R.E. 103(a); *Citron v. Fairchild Camera and Instrument Corp.,* Del.Supr., 569 A.2d 53 (1989). For the following reasons we rule that the trial court did not abuse its discretion by allow-

ing Detective Humphrey's statement into evidence.

◼ This Court has recognized that the major issue in a prosecution for alleged child sexual abuse is usually the credibility of the child. Therefore the Court has enunciated guidelines for the use of outside testimony to bolster the child's credibility. *Wheat*, 527 A.2d 269; *Powell*, 527 A.2d 276. Experts in the psychological dynamics and gradual disclosure patterns of victims of child sexual abuse are allowed to testify as to general tendencies towards gradual and sometimes conflicting disclosures by the victims. However, while such experts are allowed to explain seemingly inconsistent behavior by victims in general, they are not allowed to provide statistical probabilities of truthfulness nor are they allowed to opine on the truthfulness of a particular complainant.

The allegations presented by Jenny in this case are somewhat similar to some of the testimonial problems identified in earlier cases. Here Jenny over a ten month period gradually identified her alleged molesters, including Condon. In particular, the appellant points out that on the morning of the trial of another defendant whom she had accused, Jenny disclosed the identity of a previously unnamed alleged perpetrator. We find noteworthy the fact that the record lacks any evidence that Jenny ever recanted her allegations against Condon or any other of the alleged perpetrators. Between January and October, 1989 Jenny identified five individuals as having molested her. In her various interviews with police and social services workers, she usually, although not always, named Condon as one of her attackers. At trial one of the defense's efforts focused on these lapses in an effort to discredit her testimony. The State employed the testimony of Jenny's mother to explain that Jenny had been told to refrain from mentioning Condon, a household member, because the family, as the mother put it, intended to "deal with him privately." At a pre-trial conference the State indicated that it intended to use an expert in the psychological dynamics of child sexual abuse to explain Jenny's grad-

ual disclosure and occasional failure to name all her attackers. Because of the defense's objection as to lack of timely notice, this expert was not called by the prosecution. At trial, on direct examination Detective Humphrey noted his qualifications and experience as an investigator of child sexual abuse cases, but he did not provide an opinion as to the credibility of Jenny's accusations. Such an opinion would have been barred by this Court's opinion in *Wheat*, 527 A.2d at 276. The appellant now complains of testimony which Detective Humphrey gave on re-direct examination to explain answers to questions raised by the defense on cross examination.

Our review of the challenged testimony indicates that we must address two questions. Was Detective Humphrey's testimony "expert" under the definitions applied in the *Wheat* and *Powell* cases? If it was expert testimony, was it error for the trial court to admit it under the circumstances of this case?

An examination of the trial transcript shows that in its cross examination of Detective Humphrey, the defense asked whether he found Jenny to be credible. This direct query was put to him at least four times by defense counsel.

The State contends that the defense repeatedly employed this line of questioning in an attempt to fault Detective Humphrey's professional judgment that the allegations made by Jenny were a sufficient basis for criminal investigations and prosecutions. In reference to Detective Humphrey's first meeting with Jenny the defense elicited the following line of questioning.

Q. You asked her about truth, about lies. You felt she was being credible?

A. Yes, I did.

Q. After your interview with her did you feel she was being credible?

A. Yes, I did.

Q. In fact, you felt she was so credible, that you went before a grand jury and gave testimony?

A. Yes, I did.

.    .    .    .    .

Q. Well, you have since learned ... that she came up with additional allegations, that she hadn't told you everyone that had molested her?

.    .    .    .    .

A. I just heard about [the fifth alleged assailant named by Jenny] when this trial started.

Q. You had asked the girl, tell me how many people had molested you?

A. Yes.

Q. She told you four?

A. Yes.

Q. You felt she was credible?

A. Yes, I did.

Q. You filed indictments?

A. Yes.

Q. 10 months later you find out there was somebody else?

A. There was somebody else

On re-direct examination the State sought to clarify for the jury that it is not unusual for victims of child sexual abuse to make gradual disclosures. Before asking the question of Detective Humphrey the State sought a ruling on its admissibility from the court. Over a defense objection the court allowed the following question and answer.

Q. Detective Humphrey, now, [defense counsel] asked you some questions about [the fifth alleged assailant] and 10 months passing and so forth. Now, in your experience, based upon your experience as a detective in the sex crimes unit, is it unusual for child victims to gradually disclose with regards to either offenses or offenders?

A. It is more common than not that children will gradually disclose facts in cases. Sometimes they will disclose only partial information, and additional information won't come out sometimes for months. Sometimes even years.

### A.

We rule that the testimony provided by Detective Humphrey was expert as defined under Delaware Rule of Evidence 702.[2] The detective, through his knowledge, skill and experience, demonstrated that he possessed specialized knowledge beyond that of the average trier of fact. *Wheat,* 527 A.2d at 272. The information which he provided on redirect examination concerning gradual disclosure by victims of child sexual abuse concerned a characteristic behavior which had been demonstrated by Jenny and which was material to the issue of her credibility. Detective Humphrey's testimony assisted the jury in understanding the evidence before it and therefore was expert in nature. *Wheat,* 527 A.2d at 272.

### B.

The expert testimony provided by Detective Humphrey on redirect examination could not have been elicited by the State on direct examination because the State had failed to give the defense adequate pre-trial notice of its intent to use such testimony. *Wheat,* 527 A.2d at 275. It also would have been improper for the State on direct examination to ask Detective Humphrey, as an expert in the behavior of child sexual abuse victims, whether he found Jenny's testimony to be credible. *Wheat,* 527 A.2d at 275. However, it was not the State, but the defense which specifically questioned whether the detective found the child to be credible in light of her gradual disclosure of the alleged molesters. This testimony was "invited error" which may be the basis for reversal of a conviction on appeal only if it is

"plain," i.e. so prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. The error must be material, apparent on the face of the record, fundamental in its character, and must clearly deprive an accused of a

2. D.R.E. 702 provides:
   Rule 702. Testimony by Experts.
   If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

substantial right or show manifest injustice.

*Powell,* 527 A.2d at 279, *relying on Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (1986). Here the testimony was elicited by the defense not in an attempt to establish a fact for the jury, but in an attempt to discredit the detective's professional judgment. The defense was very effectively creating doubt in the State's case by pointing out that the case relied upon testimony from a young child who had not been completely forthcoming in all her interviews with investigating authorities. This problem of reliance on the credibility of children has been recognized as a weakness in child sexual abuse cases in Delaware and elsewhere. *Wheat,* 527 A.2d 269. *Powell,* 527 A.2d 276. *See also Adesiji v. Minnesota,* 854 F.2d 299 (8th Cir. 1988). It is well within the knowledge of an average juror that any child who has not disclosed the whole truth of a story may in fact be fabricating part of the story. Yet the psychological dynamics of a victim of child sexual abuse, including the tendency towards partial disclosure and recantation, are generally not within the knowledge of the average juror. For this reason courts allow limited use of expert testimony to explain the disclosure tendencies of victims of child sexual abuse. *Wheat,* 527 A.2d at 273. Once the defense utilized Detective Humphrey's cross-examination to create the seemingly reasonable impression for the jury that reliance on a nine year old child's incomplete disclosures to establish the case against Condon was unreasonable, the State sought to explain the basis for this reliance. The court allowed it one question to do so. This admission of testimony concerning the disclosure tendencies of victims of child sexual abuse was entirely proper to correct the false impression that the victim was likely to be lying. Through its cross-examination the defense had created false impressions concerning the detective's professional judgment and the victim's credibility. The defense had therefore opened the door to a curative explanation on re-direct examination and the court correctly limited the additional testimony to only correcting the false im-

pressions. *U.S. v. Seideman,* 933 F.2d 1017 (table) (9th Cir.1991) (text in *Westlaw*); *U.S. v. Whitworth,* 856 F.2d 1268, 1285 (9th Cir.1988); *State v. Jones,* Me. Supr., 523 A.2d 579, 580–81 (1987); *State v. Graham,* 200 Conn. 9, 509 A.2d 493, 496 (1986). Under the circumstances Detective Humphrey's testimony concerning the general disclosure tendencies of victims of child sexual abuse was properly admitted. Because he did not rely on statistical probabilities of veracity, nor go beyond his own experience, the testimony was neither prejudicial to the rights of the defendant nor did it jeopardize the fairness and integrity of the trial. *Powell,* 527 A.2d at 279.

### III.

■ Condon's second claim of error is that the trial court failed to provide the jury with an expanded instruction on the use of expert testimony in child sexual abuse cases as outlined in the *Wheat* case. 527 A.2d at 276. The State points out that at trial the defense neither requested the expanded instruction nor did it object to the jury charge as given. Our standard of review therefore is whether the failure of the court to *sua sponte* provide the expanded instruction was plain error. Supreme Court Rule 8; *Zimmerman v. State,* Del. Supr., 565 A.2d 887, 890 (1989). We do not find that it was. Detective Humphrey's expert testimony was not presented as part of the State's case in chief. Rather it was presented merely to explain a line of questioning which the defense had generated during cross-examination. The expert testimony provided by Detective Humphrey was clearly limited to his own experience. The trial court did provide a general instruction regarding expert testimony and it twice reminded the jury members that they were the sole judges of the credibility of the witnesses presented. We find no error in the instructions provided by the court.

### IV.

We also find no merit in the appellant's final two contentions, that the trial court abused its discretion by allowing two investigating officers to sit at the prosecution

table, and that comments made by the prosecutor during the trial created unfair prejudice to the defendant sufficient to require reversal of his conviction. Since the defense made appropriate objections at trial, both of these issues may be presented for consideration on appeal. Supreme Court Rule 8.

 As to the first of these issues, appellant argues that because Delaware Rule of Evidence 615 [3] is written in the singular, no two persons may represent the State as investigating officer and thereby be exempt from sequestration. We note that sequestration is at the discretion of the court. It was not unreasonable nor abuse of discretion for the trial court in this case to allow two investigating officers to be present at the prosecution table since the crimes allegedly occurred in two police jur-

isdictions and the officers had investigated separate incidents.

As to the appellant's contentions that comments or questions from the prosecutor at trial created unfair prejudice against the defendant, our review of the record leads us to conclude that the trial court acted properly on all defense objections and no reversible error occurred.

## V.

For the foregoing reasons the convictions of the appellant are AFFIRMED.

---

**3.** Delaware Rule of Evidence 615 states:
At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.