Mʳ√

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-518

PORTLAND REGIONAL CHAMBER
OF COMMERCE, et al.,

      Plaintiffs

v.

                              ORDER

CITY OF PORTLAND, et al.,

      Defendants

**Plaintiffs–John Aromando, Esq.
Defendants–Dawn Harmon, Esq.
Intervenors–Shelby Leighton, Esq.**

and

CALEB HORTON, et al.,

      Intervenor - Defendants

REC'D CUMB CLERK'S OF
FEB 1 '21 AM 9:28

This case involves a challenge to the validity of a minimum wage provision applicable to declared emergencies that was enacted by the voters of Portland last November as part of a successful citizen's initiative to increase the minimum wage for work performed in the City of Portland.

The plaintiffs are the Portland Regional Chamber of Commerce, the Alliance for Addiction & Mental Health Services (a nonprofit with member organizations located in Portland), and four Portland businesses: Slab LLC, Nosh LLC, Gritty McDuff's, and Play It Again Sports. Plaintiffs (collectively, "PRCC") contend in Count I of their complaint that the emergency minimum wage provision in the citizen's initiative was not validly enacted under the direct initiative provision applicable to municipalities in Art. 4, Pt. 3 § 21 of the Maine Constitution. In Count II of the complaint PRCC asserts that the emergency minimum wage provision was not validly enacted under section 9-36(a) of the Portland City Code. In Count III of the complaint PRCC contends

that, if the emergency minimum wage provision is otherwise valid, it does not take effect until January 1, 2022.

PRCC's complaint named the City of Portland and its City Manager, Jon Jennings, as defendants (collectively, the "City"). In most respects, the City's position is not adverse to that of PRCC. Specifically, the City did not take a clear position with respect to the first two claims raised by PRCC, the City agrees with PRCC as to the effective date, and the City also raises an additional argument that the Initiative is invalid because it purports to apply to city employees. The defense of the emergency minimum wage provision has therefore been conducted by two Intervenor-Defendants, Caleb Horton and Mario Roberge-Reyes. Intervenors are employees who work in Portland at wages that are lower than they contend are required under the emergency minimum wage provision, which they assert went into effect on December 6, 2020.[1]

The parties agreed to an expedited schedule and are now before the court on PRCC's motion for summary judgment. The material facts are undisputed,[2] and oral argument on the motion was held on January 20, 2021.

In ruling on this dispute, the court is not ruling on the wisdom of the proposed emergency minimum wage provision or whether its effects will be beneficial or harmful. Although PRCC and

---

[1] Mr. Horton has been working at the Whole Foods store in Portland since July 2020 and is paid $15 per hour. Mr. Roberge-Reyes has been working at the Whole Foods store in Portland since November 2020 and is paid $16 per hour. If the emergency minimum wage provision is valid and in effect, they would each now be entitled to a minimum wage of $18 per hour for as long as the pandemic state of emergency exists.

[2] Almost all of the factual assertions in PRCC's statement of material facts and in the statements of additional facts submitted by the City and by Intervenors are admitted. There are a small number of qualifications and denials, but none create a disputed issue of material fact for trial. Intervenors denied two factual assertions with respect to the harm alleged by PRCC, but it is evident – and Intervenors do not dispute – that there currently exists a significant and justiciable controversy between PRCC and Intervenors. For its part, PRCC objects that a number of the factual assertions by Intervenors are immaterial. Subject to that objection, however, and with one exception, PRCC has admitted those facts for purposes of summary judgment. The one exception does not create a disputed factual issue for trial.

2

Intervenors have differing views on those issues,[3] the court's role is solely to consider whether the emergency minimum wage provision is valid under the municipal initiative provisions of the Maine Constitution and the Portland City Code and, if so, the effective date of that provision.

As stated below, the court concludes that the emergency minimum wage provision is not invalid under either Me. Const. Art. 4, Pt. 3 § 21 or under section 9-36(a) of the Portland City Code, but that, under its plain language, it does not take effect until January 1, 2022.

1. Citizens' Initiatives on Municipal Affairs under Maine Constitution and Portland City Code

Article 4, Part 3, section 21 of the Maine Constitution provides that municipalities may establish a process for direct initiative and people's veto by the citizens of the municipality:

> The city council of any city may establish the direct initiative and people's veto for the electors of such city in regard to its municipal affairs, provided that the ordinance establishing and providing the method of exercising such direct initiative and people's veto shall not take effect until ratified by vote of a majority of the electors of said city, voting thereon at a municipal election. Provided, however, that the Legislature may at any time provide a uniform method for the exercise of the initiative and referendum in municipal affairs.

Pursuant to that provision a direct initiative provision was enacted by the Portland City Council and ratified by the voters in 1991. It is contained in Article III of Chapter 9 of the City Code. Section 9-36 provides in pertinent part as follows:

Sec. 9-36. How invoked.

> (a) In general. The submission to the vote of the people of any proposed ordinance dealing with legislative matters on municipal affairs or of any such ordinance enacted by the city council and which has not yet gone into effect, may be accomplished by the presentation of a petition therefor to the city council in the

---

[3] Thus, plaintiffs have submitted affidavits asserting that they will have to lay off employees and suspend certain aspects of their business or activities if the emergency minimum wage is in effect, while Intervenors argue that the emergency minimum wage is appropriate "hazard pay" for workers whose work puts them at risk during the pandemic.

3

manner hereinafter provided and signed by at least one thousand five hundred (1,500) voters. The submission of a proposed ordinance, or amendment or repeal, in whole or in part, of an ordinance already in effect shall be hereinafter referred to as the direct initiation of legislation or "initiative." The submission of a petition to override any ordinance passed by the city council but which has not yet gone into effect shall be hereinafter referred to as the "people's veto."

(b) Applicability. Neither this article, nor ordinances dealing with appropriations, tax levy, or with wages or hours of city employees shall be subject to the initiative and "people's veto" referendum provisions herein established.

This procedure was invoked by the proponents of a citizens' initiative to amend Portland's Minimum Wage Ordinance (the "Initiative"). They submitted the required 1500 signatures and the initiative was placed on the Portland ballot at last November's election. On November 6, 2020, the City declared that the Initiative had been approved by a majority of the voters. Under section 9-42 of the City Code, ordinances enacted by initiative take effect 30 days after the official results are declared. Although the ordinance itself has taken effect, the effective date of the emergency minimum wage provision is disputed.

2. The Provisions of the Initiative and the Emergency Minimum Wage Provision

Portland's Minimum Wage Ordinance is set forth in Chapter 33 of the City Code. A copy of the complete Initiative showing the amendments made to the existing provisions of Portland's minimum wage ordinance is contained in the record as Exhibit B to the verified complaint and to PRCC's statement of material facts. It includes the emergency minimum wage provision that is the subject of this action.

Existing section 33.7(a), which was unchanged, provides that "except as provided herein, Employers shall pay all Employees no less than the Minimum Wage established by this ordinance

4

for each hour worked within the City Limits." The amendments made by the Initiative begin with section 33.7(b), which provides as follows:

(b) Minimum Wage rate:

(i) Beginning on January 1, 2022, the regular Minimum Wage for all Employees, including, but not limited to, Service Employees, shall be raised to $13.00 per hour;

(ii) Beginning on January 1, 2023, the regular Minimum Wage for all Employees, including, but not limited to, Service Employees, shall be raised to $14.00 per hour; and

(iii) Beginning on January 1, 2024, the regular Minimum Wage for all Employees, including, but not limited to, Service Employees, shall be raised to $15.00 per hour; and

(iv) On January 1, 2025 and each January 1st thereafter, the minimum hourly wage then in effect must be increased by the increase, if any, in the cost of living. The increase in the cost of living must be measured by the percentage increase, if any, as of August of the previous year over the level as of August of the year preceding that year in the Consumer Price Index for All Urban Consumers, CPI-U, for the Northeast Region, or its successor index, as published by the United States Department of Labor, Bureau of Labor Statistics or its successor agency, with the amount of the minimum wage increase rounded to the nearest multiple of 5¢. If the state minimum wage established by 26 M.R.S. § 664 is increased in excess of the minimum wage in effect under this ordinance, the minimum wage under this ordinance is increased to the same amount, effective on the same date as the increase in the state minimum wage, and must be increased in accordance with this ordinance thereafter.

The Initiative also amends section 33.7(c), applicable to the allowable credit for minimum wage purposes given to tips, to provide that the tip credit would be limited to half of the minimum wage established by the Initiative.

The remaining change made by the Initiative – the provision contested in this action – is the addition of the following provision as subsection 33.7(g):

5

(g) Effect of Emergency Proclamation. For work performed during a declared emergency, the effective Minimum Wage rate established by this ordinance shall be calculated as 1.5 times the regular minimum wage rate under subsection (b) above. A declared emergency under this ordinance shall include the period of time during which:

(i) A proclamation issued pursuant to Chapter 2, Sec. 2-406, of this code declares an emergency to exist, if such emergency proclamation is geographically applicable to the Employee's workplace; or

(ii) A proclamation issued pursuant to 37-B M.R.S. § 742 declares an emergency to exist, if such emergency proclamation is geographically applicable to the Employee's workplace.

A declared emergency under this ordinance shall not apply to work performed under a teleworking arrangement, as defined under 5. U.S.C. § 6501, allowing the Employee to work from home.

There is no dispute that proclamations declaring a state of emergency have been issued and extended by both the Governor pursuant to 37-B M.R.S. § 742 and by the City pursuant to Chapter 2 of the City Code and that those proclamations are currently in effect.

3. Validity of the Emergency Minimum Wage Provision under Art. 4, Pt. 3 § 21

PRCC's first challenge to the validity of the emergency minimum wage provision is that it exceeds the initiative power allowed to municipal voters under Me. Const. Art. 4, Pt. 3 § 21. Specifically, PRCC contends that the section 21 only authorizes a city council to "establish the direct initiative and people's veto for the electors of such city in regard to its municipal affairs" (emphasis added), that binding Law Court precedent establishes that this is limited to "exclusively" municipal affairs, and that the emergency minimum wage does not fit within the limited category of matters that are exclusively municipal.

6

PRCC's argument is based on two cases decided by the Law Court considering the municipal initiative provision. The first was a decision in 1938 involving an attempt to subject to referendum the assessment by the Bangor City Council of a property tax to fund schools. *Burkett v. Youngs,* 135 Me. 459, 199 A. 619 (1938). The Law Court held that the wording in Art. 4, Pt. 3, § 21 limiting citizen initiatives to "municipal affairs" meant matters involving the internal business of a municipality, issues that it suggested were strictly of a local character limited to the interests of city residents apart from the people of the state at large. 135 Me. at 464, 466, 199 A. at 620-21. It went on to state:

> The State at large is equally concerned with the city regarding education, the support of the poor, the construction and maintenance of highways, the assessment and collection of taxes, and other matters . . . . In fact, there are comparatively few governmental doings that are completely municipal.

*Id.* at 467, 199 A. at 621 (citations omitted).

The Court stated that where the "manifest intention" of the Maine Constitution that municipal referenda be "limited to municipal affairs, that intention must prevail." *Id.,* 199 A. at 621-22. The Court concluded that the proposed Bangor referendum was not limited to municipal affairs, and it therefore rejected the proponents' attempt to subject the property tax to a referendum. The Court also noted that in some respects the amount of money to be allocated for school purposes had been required by the Legislature. *Id.* at 463, 199 A. at 620.

The second case was decided by the Law Court in 1991. *Albert v. Town of Fairfield,* 597 A.2d 1353 (Me. 1991). In *Albert* the Court addressed the validity of a municipal referendum overturning the town council's acceptance of a town way. Citing the language from *Burkett* quoted above, the Court noted that *Burkett* had held that the municipal referendum procedure could not

be used to reject a city council's general appropriation resolve as such an action is both a state and local matter. 597 A.2d at 1354-55.

The *Albert* Court went on to say:

> Whether the analysis is premised on municipal versus state affairs or legislative versus administrative duties, the goal remains the same: identify those areas in which the municipality has been given the discretion to do as it wishes. In such areas, the action of the municipality's legislative body is subject to the referendum procedure.

*Id.* at 1355.

The Court noted that the Legislature had statutorily granted authority to municipalities to accept a dedication of land for local highway purposes. *Id.* at 1354-55 (citing 23 M.R.S. § 3025). It concluded that since the Legislature had committed the decision to accept a town way to the legislative discretion of a municipality, such an action was "exclusively a municipal affair" subject to a referendum. *Id.*

PRCC argues that the emergency minimum wage provision is not exclusively municipal for two reasons. The first is because the State has set a statewide minimum wage and therefore, PRCC argues, the State is equally concerned with the subject of minimum wages and the latter is not an issue of a purely local character affecting the interests of only municipal residents apart from the people of the state at large. This particular argument is curious because it would also apply to all of the Initiative's minimum wage provisions – not just the emergency minimum wage provision – even though PRCC is only challenging the emergency provision in this action.[4]

---

[4] PRCC also argues that the emergency minimum wage provision is not exclusively municipal because it has extraterritorial effects, affecting, for example, Westbrook residents who work in Portland and also affecting members of plaintiff Alliance for Addiction & Mental Health Services who have employees both in Portland and outside who would now be subject to different minimum wage requirements. This argument would likewise apply not just to the emergency minimum wage provision of the Initiative but to all of the minimum wage provisions in the Initiative.

8

Second, PRCC contends that the emergency minimum wage provision is not exclusively municipal because it affects the State's authority and ability to effectively manage statewide emergencies. If true, this is an argument that the court would expect would come from the State rather than from PRCC. There is no evidence, and the court is not persuaded, that the presence of the emergency minimum wage provision has had or or will have any effect on the actions of the Governor to utilize her state of emergency powers to respond to the pandemic.

Nevertheless, the court agrees that if the language of the 1938 *Burkett* opinion is still controlling, the emergency minimum wage provision would not qualify as "exclusively" municipal and would therefore not be a proper subject for a municipal citizen's initiative. As Intervenors point out, however, municipalities have been granted vastly more authority since 1938, beginning in 1969 with the Home Rule Amendment to the Constitution, Art. 8, Pt. 2 § 1, and particularly in 1987 with the Legislature's enactment of 30-A M.R.S. § 3001:

> Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter.

PRCC does not dispute that section 3001 has granted municipalities the discretion to enact minimum wage ordinances.[5] If, as suggested in *Albert v. Town of Fairfield,* the municipal direct initiative authority exists in "those areas in which the municipality has been given the discretion to do as it wishes," 597 A.2d at 1355 (emphasis added), municipal direct initiatives would include authority to enact or amend municipal minimum wage ordinances.

---

[5] Intervenors have cited examples of similar municipal minimum wage ordinances in Rockland and Bangor.

PRCC argues that the *Albert* case was decided in 1991, after the enactment of 30-A M.R.S. § 3001, and nevertheless reiterated the "exclusively municipal" test from *Burkett*. There are several answers to this argument. The first and most significant is that, since *Albert*, the Law Court has ruled that the authority of citizens to initiate legislation should be construed as favorably with respect to municipal citizen initiatives as with the exercise of direct initiatives under the Maine Constitution:

> We liberally construe grants of initiative and referendum powers so as to "facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate." *Allen v. Quinn*, 459 A.2d 1098, 1102-03 (Me. 1983); *see also McGee v. Sec'y of State*, 2006 ME 50 ¶ 25, 896 A.2d 933 ("The broad purpose of the direct initiative is the encouragement of participatory democracy").

*Friends of Congress Square Park v. City of Portland*, 2014 ME 63 ¶ 9, 91 A.3d 601. The Law Court has thus moved beyond the narrow construction of Art. 4, Pt. 3 § 21 demonstrated in *Burkett*.

The second reason is that there is no indication that the broadened authority of municipalities under 30-A M.R.S. § 3001 was raised in *Albert*. Indeed, the acceptance of a town way was so obviously and exclusively a municipal affair under the *Burkett* test that the Law Court had no need to go beyond that test in order to uphold the municipal referendum challenged in *Albert*.

It bears emphasis that Art. 4, Pt. 3 § 21 authorizes municipalities to establish a direct initiative process in regard to "municipal affairs." The constitutional text does not modify municipal affairs with the word "exclusively." The Law Court's interpretation that it was limited to exclusively municipal affairs made sense in light of the constraints on municipal authority prior to the Home Rule Amendment and the enactment of 30-A M.R.S. § 3001. In *School Committee of York v. Town of York*, 626 A.2d 935, 938 (Me. 1993), the Law Court stated that 30-A M.R.S. § 3001 broadened the municipal home rule authority set forth in the Maine Constitution by

10

permitting municipal legislation in areas beyond those expressly designated in the Home Rule Amendment as "local and municipal in character." PRCC argues that this means that the scope of "municipal affairs" within the meaning of Art. 4, Pt. 3 § 21 remains unchanged. However, the Court was not construing Art. 4, Pt. 3 § 21 but was discussing the expansion of municipal authority beyond the scope of what had formerly been considered "municipal." In light of that expansion, it is logical to interpret the municipal initiative power under Art. 4, Pt. 3 § 21 as coextensive with the broadened legislative authority of the city council except in those areas which the municipal code or charter has excluded.[6]

Finally, looking beyond the language in *Burkett,* that case involved an attempt to subject to a referendum a property tax that the city council had enacted to fund schools – which if repealed could have resulted in a conflict with state legislation requiring that certain minimum amounts be raised and expended to fund schools and that certain state taxes be collected locally and then paid to the State. *See* 135 Me. at 463, 199 A. at 620. In *Albert,* the Law Court emphasized that state legislation authorized municipalities to accept town ways. 597 A.2d at 1355. In this case, municipal minimum wage ordinances do not pose any conflict with state law, and PRCC's argument that the emergency minimum wage provision could potentially affect the Governor's actions under her declaration of emergency powers is unconvincing. Accordingly, this case belongs in the category where a direct citizen's initiative on municipal affairs is authorized.

For the above reasons, the court concludes that as a matter of law the emergency minimum wage provision was validly enacted under Art. 4, Pt. 3 § 21 of the Maine Constitution. Summary

---

[6] As seen above, the Portland City Code provides that neither the City's direct initiative provision itself nor any ordinances dealing with appropriations, tax levy, or the wages and hours of city employees is subject to the direct initiative or people's veto procedure. Portland Code § 9-36(b).

11

judgment is therefore granted against PRCC on Count I of PRCC's complaint. *See* M.R. Civ. P. 56(c) (where appropriate, summary judgment may be granted against the moving party).


4. Validity of the Emergency Minimum Wage Provision under Code § 9-36(a)

PRCC's argument that the emergency minimum wage provision is invalid under the direct initiative provision of the Portland City Code is based on the language of Code Section 9-36(a) authorizing citizens' initiatives dealing with "legislative matters on municipal affairs" (emphasis added). In *Friends of Congress Square Park v. City of Portland,* the Law Court interpreted that language to restrict citizens' initiatives to "legislative matters, as opposed to administrative matters" and proceeded to consider whether the amendments proposed by initiative in that case were legislative or administrative. 2014 ME 63 ¶¶ 10-11.

PRCC essentially contends that the emergency minimum wage provision is administrative because it potentially restricts the City Manager's executive authority after a declaration of emergency under Portland Code § 2-408. Under the Portland's City Code the City Manager has the authority to declare a state of emergency, but no state of emergency declared by the City Manager may continue for longer than 5 days unless renewed by the City Council. Portland Code §§ 2-406, 2-407(b). During an emergency, section 2-408(a) authorizes the City Manager to promulgate any regulations deemed necessary to protect life and property and preserve critical resources, including any regulations necessary to preserve public peace, health, and safety.

The Law Court's decision in *Friends of Congress Square Park* sets forth eight factors that courts have considered in determining whether municipal actions are legislative or administrative in nature. *See* 2014 ME 63 ¶ 13 n. 7. No single factor is determinative. The court has reviewed those factors and finds that only one of those – whether a provision relates to subjects that are

12

temporary in operation and effect as opposed to subjects of a permanent or general nature –
arguably supports PRCC's categorization of the emergency minimum wage provision as
administrative. The others are either neutral or support the conclusion that the emergency
minimum wage is legislative in nature.

*Friends of Congress Square Park* does suggest that the most significant consideration on
whether an act exceeds the scope of the direct initiative power is whether it "compels or bars
actions by elected officials that would seriously hamper governmental functions." It also cited
authority to the effect that municipal initiative power should not be interpreted so as to "destroy
or impair" the efficacy of some other governmental power. *Id.* ¶ 16.

The emergency minimum wage provision does not compel or bar any action by the City
Manager or the City Council. It affects the wages of persons working during a state of emergency,
but it does not destroy or impair the City Manager's ability under section 2-408 to promulgate
regulations deemed necessary to protect life and property, preserve critical resources, and preserve
public peace, health, and safety. The court therefore concludes that, as a matter of law, the
emergency minimum wage provision is legislative in nature and was a proper subject for a citizens'
initiative under section 9-36(a) of the Portland Code. Summary judgment is granted against PRCC
on Count II of the complaint.

5. Effective Date

In interpreting legislative provisions enacted by direct initiative, the Law Court has applied
the same rules of statutory interpretation that govern other legislation:

> The first and best indicator of legislative intent is the plain language
> of the statute itself. If the statute is unambiguous, we interpret the
> statute according to its unambiguous language, unless the result is
> illogical or absurd. If the language is ambiguous, we will consider

13

the statute's meaning in light of its legislative history and other indicia of legislative intent. If a statute can reasonably be interpreted in more than one way and comport with the actual language of the statute, an ambiguity exists.

*Wawenock LLC v. Department of Transportation*, 2018 ME 83 ¶ 7, 187 A.3d 609 (quotations omitted). The *Wawenock* case involved interpretation of the Sensible Transportation Policy Act, 23 M.R.S. § 73, enacted by citizens' initiative in 1991.

Looking first to the language of the emergency minimum wage provision, it provides that for work during a declared emergency, the effective minimum wage rate "established by this ordinance shall be calculated at 1.5 times the regular minimum wage rate <u>under subsection (b) above</u>." Section 33.7(g) (emphasis added). The minimum wage rates under section (b) of the Initiative first apply "beginning on January 1, 2022," *see* Section 33.7(b)(i), with increases on the first of January of every succeeding year.

The Initiative does not specify a minimum wage rate beginning any time prior to January 1, 2022. As shown by Exhibit B to the complaint and PRCC's statement of material facts, the Initiative repealed the provisions of the existing minimum wage ordinance that would have taken effect on January 1, 2021. Under the language of section 33.7(g), therefore, the emergency minimum wage rate does not take effect until January 1, 2022, the first time any regular minimum wage rate is specified by Section 33.7(b). This means that the State minimum wage rate (presently $12.00 per hour) currently governs Portland wages.

Intervenors point to language in section 33.7(b)(iv) that "[i]f the state minimum wage established under 26 M.R.S. § 664 is increased in excess of the minimum wage in effect under this ordinance, the minimum wage under this ordinance is increased by the same amount." The problem with is argument is that it speaks of an increase in excess of the minimum wage "<u>in effect</u>

14

under this ordinance" (emphasis added).[7] As discussed above, there is no minimum wage in effect under the ordinance prior to January 1, 2022 and therefore under the unambiguous language of the Initiative, the emergency minimum wage is not currently in effect.

The Law Court has been firm in stating that "only if the plain language of the statute is ambiguous" will the court look beyond that language to examine other indicia of legislative intent, such as legislative history. *E.g.*, *Manirakiza v. Department of Health and Human Services*, 2018 ME 10 ¶ 8, 177 A.3d 1264. At oral argument, counsel for Intervenors suggested that a different rule should apply in the case of citizens' initiatives. However, in initiative cases where the Law Court has looked to legislative history, the issue under consideration was either not resolved by any legislative language or the legislative language was ambiguous. *See, e.g.*, *In re Opinion of Justices*, 283 A.2d 234, 236 (Me. 1971) (discerning expiration date of authority for reapportionment); *League of Women Voters v. Secretary of State*, 683 A.2d 769, 773 (Me. 1996) (language relating to potential application of term limits to sitting officeholders "could be construed in two possible ways").

In *Wawenock LLC v. Department of Transportation*, the Law Court concluded that based on the unambiguous language of the citizen-initiated statute, "we need not look beyond that language to discern the legislative intent." 2018 ME 83 ¶ 12. It nevertheless did look at the legislative history but did so in part "in the interest of clarifying the means of determining legislative intent for citizen-enacted legislation." *Id.*

The *Wawenock* Court first reaffirmed that legislative intent is determined as a matter of law. *Id.* ¶ 13. It noted that the usual sources of legislative history – legislative committee reports,

---

[7] In addition, this language also refers to future increases in the state minimum wage, not to the existing state minimum wage currently in effect.

15

statements of fact in legislative bills, and statements made in legislative debate – are not available with respect to citizen-initiated legislation, and it therefore pointed to several potential alternative sources of legislative history. *Id.* ¶ 17. Only one of those listed – the language of the ballot question – is available with respect to municipal initiatives.[8]

Intervenors have marshalled other information which they contend the court should consider on the issue of legislative intent but, even assuming that the effective date of the emergency wage provision was ambiguous, the court can find no Law Court precedent suggesting that it can consider or rely on newspaper articles, post hoc statements, or post hoc legislative history offered by the drafters of an initiative.

If the legislative language was ambiguous, the court could consider the ballot question, a copy of which is appended to Intervenors' statement of additional material facts as Exhibit E. The ballot question recites that the proposed ordinance would require employees to be paid 1.5 times for minimum wage rate for work performed during a state of emergency. It goes on to state:

> For instance, if the minimum wage were $12/hr, and the State of Maine or the City of Portland issued emergency proclamations such as the emergency orders declared during the COVID-19 pandemic, work performed during that emergency would be paid at 1.5 times the minimum wage, or $18/hr. This higher rate of pay would not apply to employees being allowed to work from home.

This language gives an example of how the emergency wage provision would apply. However, it does not specify that the emergency wage will take effect earlier than January 1, 2022. It therefore does not conflict with the plain language of the initiative.

---

[8] The others are documents prepared in connection with citizen-initiated proposals for state legislation pursuant to 1 M.R.S. § 353: an explanatory statement prepared by the Attorney General and estimates prepared by the Legislature's Office of Fiscal and Program Review. No similar documents are prepared for municipal initiatives.

16

The court recognizes that the ballot question might have led voters to believe that the emergency wage provision would take effect during the existing state of emergency. Nevertheless the court is constrained to follow Law Court precedent that when the wording of an enactment is unambiguous, the plain language of the ordinance controls, and the court may not to seek a contrary result by resorting to legislative history.

*Wawenock LLC v. Department of Transportation* does state that the unambiguous language does not control if the result would be "illogical or absurd." 2018 ME 83 ¶ 7. Intervenors have not expressly argued that a January 1, 2022 effective date would be illogical or absurd, and in the court's view, it is neither illogical or absurd for the ordinance, interpreted based on its plain language, to provide a delay in the effective date of both the emergency minimum wage provision and the new regular minimum wage provision so that both are phased in at the same time.

In sum, under the established rule of statutory interpretation, persons subject to a statute are entitled to rely on its plain language. The court concludes that as a matter of law the effective date of the emergency minimum wage provision is January 1, 2022.

6. Remaining Issues – City Employees and Intervenors' Cross Claim

The above resolves all of the claims raised in PRCC's complaint and in its motion for summary judgment. Two issues remain.

In its response to PRCC's motion for summary judgment, the City noted that the Initiative, on its face, applied to "all Employees." However, the Portland Code's authorization for citizen initiatives expressly provides that ordinances dealing with wages or hours of city employees shall not be subject to direct initiative. Portland Code § 9-36(b).

Although the City argues that this is a basis to hold the entire Initiative invalid, it is not clear that this argument is properly before the court. The City neither filed a separate claim seeking to invalidate the Initiative on this ground nor did it pursue this issue by asserting it as a separate basis for summary judgment. There is also no evidence as to the wages of city employees and the extent to which the Initiative might affect them.

In any event, assuming that the court can consider this argument, it holds that while the Initiative would not be valid as applied to City employees pursuant to Code section 9-36(b), that partial invalidity does not render the Initiative invalid as applied to other employees because its application to City employees is plainly severable. *See Bayside Enterprises Inc. v. Maine Agricultural Bargaining Board*, 513 A.2d 1355, 1360 (Me. 1986) (invalidation of one aspect of a statute will not result in invalidation of the remainder of the statute if the remainder of the statute can be given effect).

The final issue in the case is a cross-claim filed by Intervenors against the City Manager. Based on their argument that the emergency minimum wage provision took effect on December 6, 2020, Intervenors seek an order requiring the City Manager to immediately enforce the emergency minimum wage provision pursuant to Portland City Code § 33.9.

Although Intervenors' cross-claim was not the subject of the pending motion for summary judgment, the court's ruling as to the effective date of the emergency minimum wage provision necessarily requires that the cross-claim be dismissed. In paragraph 32 of their statement of additional material facts, Intervenors assert that the City is not presently enforcing the emergency minimum wage provision "and has stated its intention not to enforce it until January 2022." At this point Intervenors do not have any basis to seek earlier enforcement, and the pendency of their

18

cross-claim does not present a ground to delay the expedited appeal of this court's ruling to which all parties have agreed.[9]

The entry shall be:

1. The court concludes that the emergency minimum wage provision is not invalid under Me. Const. Art. 4, Pt. 3, § 21, and summary judgment is granted dismissing Count I of plaintiffs' complaint.

2. The court concludes that the emergency minimum wage provision is not invalid under section 9-36(a) of the Portland City Code, and summary judgment is granted dismissing Count II of plaintiffs' complaint.

3. On Count III of plaintiffs' complaint, the court enters a declaratory judgment that the effective date of the emergency minimum wage provision is January 1, 2022.

4. In light of the ruling on Count III of plaintiffs' complaint, Intervenors' cross-claim against the City of Portland is dismissed.

5. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February __/__, 2021

_____
Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 02/01/21

---

[9] The court therefore does not need to reach the City's argument that the City Manager has enforcement discretion and that, as a result, Intervenors would not be entitled to relief against the City Manager even if the emergency minimum wage provision were immediately effective.

19