RALPH W. FARRIS, ATTORNEY GENERAL
ON RELATION OF CARL E. ANDERSON, ET AL.
*vs.*
EDWARD T. COLLEY, ET AL.

Cumberland.   Opinion, March, 1950.

*Wilfred A. Hay,*
*Charles Pomeroy,*
*Theodore R. Brownlee,* for plaintiff.

*Barnett I. Shur,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J. On report. The Attorney General on relation of certain persons, who are members of the police department and voters of the City of Portland, seeks by mandamus proceedings to compel the respondents, members of the city council, to take the necessary steps to submit a proposed ordinance to the voters under the initiative provisions of the city charter. It is agreed that the proposed ordinance was duly initiated and presented to the city council, and that action by the council is required if the proposal is to be voted upon by the people.

The case is presented on demurrer by the relators to the return of the respondents to the alternative writ, together with an agreed statement of facts.

The controlling issue is whether the proposed ordinance, if adopted, would be valid. In other words, may the proposed ordinance legally be adopted by the city? If so, the proposal must be submitted to the voters, but not otherwise.

The title "An ordinance fixing the minimum wages and the maximum hours for patrolmen of the Police Department of the City of Portland, Maine" fully and adequately describes the proposed ordinance, and for our purposes it is unnecessary to consider its details.

At the outset we point out that the only question before us is the existence or non-existence of power in the City of Portland, "a body politic and corporate," to use the terms of the charter, to adopt the proposed ordinance. Whether the policy expressed in the proposal is wise or unwise is not for us to consider or pass upon.

It must be kept firmly in mind that a city is the creation of and subject to the control of the Legislature. The powers of a city are derived from two sources: first, from the charter and special legislation directed to the particular city; and second, from the Constitution of the State and statutes of general application. Within the charter, except as otherwise provided by statute and constitution, we find the framework of the municipal government with the various powers and duties therein established and distributed.

Chief Justice Dunn said in *Burkett, Attorney General* v. *Youngs et al.,* 135 Me. 459 at 465, 199 A. 619, 621 (1938):

> "Purely of legislative creation, the municipality, as an instrument of government, a hand of the state, is always subject to public control through the Legislature."

Like principles were stated by the justices of our court in answering questions submitted by the governor as follows:

> "Municipal corporations are but instruments of government, created for political purposes and subject to legislative control.
> Legislative authority to create and incorporate political sub-divisions of the State clearly embraces the right to alter or amend the original charter or act of incorporation as the public welfare demands and the wisdom of the lawmaking power dictates."
>
> 133 Me. 532 at 535, 178 A. 613 at 615 (1935)

For a thorough discussion of the underlying principles, see *2 McQuillin, The Law of Municipal Corporations (3d Edition 1949) Sections 9.01 and 9.03.*

The charter of Portland was enacted by the Legislature and accepted by the voters in accordance with the Act in 1923. *P. & S. L., 1923, Chap. 109.* Subsequent amendments by the Legislature do not bear upon the present problem, nor do we find any statute of general or local application touching the issue here presented.

That the principle of control of a municipality by the Legislature has force and vitality is well illustrated by acts of the Legislature of 1949 affecting Portland. Statutes which granted authority to provide by ordinance for adjusting pensions of members of the police and fire departments and for an annuity to dependents of any member of such departments who has lost his life in performance of his duties were amended by *P. & S. L., 1949, Chap. 37 and Chap. 90.* The city was authorized to provide by ordinance for an annuity to the dependents of any member of its department of electrical appliances who has lost his life in performance of his duties. *P. & S. L., 1949, Chap. 73.* The charter was amended with respect to issuance of bonds and form of the ballot, and in neither case was the amendment referred to the people. *P. & S. L., 1949, Chap. 72 and Chap. 103.*

Our court has said in *Ellsworth* v. *Municipal Officers of Portland,* 142 Me. 200, 49 A. (2nd) 169 at 171 (1946):

"When the new city charter was granted to the City of Portland in 1923, Priv. & Sp. Laws, Ch. 109, it was clearly the intention to provide a new and comprehensive system for the government of the city."

Under the charter the administration, in general, of all the fiscal, prudential, and municipal affairs, with the exception of the schools, is vested in the city council, a body of nine members which acts only by ordinance, order, or resolve. The city manager, chosen by the council "solely on the basis of his character and executive and administrative qualifications, is "the administrative head of the city" and "responsible to the city council for the administration of all departments." *Charter: Art. II "City Council." Sec. 1 and Sec. 8; Art. VI "Administrative Officers," Sec. 1 (a), Sec. 6, and Sec. 7.*

The initiative and referendum established by the charter are applicable in terms to "any proposed ordinance, order or resolve," or to "any ordinance, order or resolve enacted

by the city council which has not yet gone into effect."
*Charter: Art. III, Sec. 1.*

Our constitution, in Section 21 of Amendment XXXI, permits the city council of any city to establish the initiative and referendum in regard to its municipal affairs on ratification at a municipal election, and authorizes the Legislature to provide at any time "a uniform method for the exercise of the initiative and referendum in municipal affairs."

The City of Portland has not adopted an initiative and referendum ordinance under the constitution nor has the Legislature enacted a uniform method applicable to cities generally. The source of the initiative and referendum in Portland is in the charter alone and not elsewhere.

No action by the city through the city council or the people can alter or change the charter which was enacted not by the people of Portland but, to use the words of the legislative act, "by the People of the State of Maine." The rule is clearly stated in *5 McQuillin, Law of Municipal Corporations* (3d Edition 1949), *Sec. 15.19,* as follows:

> "The charter of the city is the organic law of the corporation, being to it what the constitution is to the state, and the charter bears the same general relation to the ordinances of the City that the constitution of the state bears to the statutes.
> The proposition is self-evident, therefore, that an ordinance must conform, be subordinate to, and not exceed the charter and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state. Consequently, an ordinance violative of or not in compliance with the city charter is void. Ordinances must not only conform with the express terms of the charter, but they must not conflict in any degree with its object or with the purposes for which the local corporation is organized."

> "The rule that contravention of the charter voids an ordinance is applicable to an ordinance adopted by the electors of the city."

We turn to the charter to ascertain how and in what manner the salaries of the patrolmen are established.

Patrolmen are appointed by the city manager upon recommendation of the chief of police. The charter in Article VI, Section 1 (c), reads: "All other employees shall be appointed by the city manager upon recommendation of the heads of their departments." Relators and respondents agree that appointments of patrolmen are so made. Salaries of patrolmen are fixed by the city manager subject to the approval of the city council. Article VI, Section 5 of the Charter reads: "Compensation of Officers. The city council shall fix by order the salaries of the appointees of the city council. Salaries of the appointees of the city manager shall be fixed by the city manager, subject to the approval of the city council."

In words clear and precise the charter fully and completely covers the steps of appointment of patrolmen and the fixing of their salaries by the city manager with action by the city council, limited only to approval or disapproval. The council has in fact only a veto power. The relationship of the city manager and the city council is not unlike that of the Governor and Council in matters of executive action accomplished only with the advice and consent of the council. *Constitution Art. V, Part First, Sec. 8.* It is the organic law of the city,—the charter that cannot be altered or changed by city council or the people of Portland—, which provides for the appointment and fixing of salaries of patrolmen and certain other employees by the administrative head of the city subject only to the approval of the city council.

The proposal is an attempt to adopt by local law a salary scale, limited to be sure in scope to a minimum standard for a particular group of city employees. Obviously the term "wages" used in the ordinance is included within the term "salaries" in the charter and for our purposes we will generally use the term "Salaries."

We need not enter into a discussion whether the proposal is legislative or administrative in nature, or whether the initiative operates in one case and not in the other, or whether the Constitution prohibits the exercise of the initiative on the proposal here presented. Such questions have been well and ably argued by counsel for relators and respondents, but in our view need not and should not be here decided.

Our problem is *not* whether by act of the Legislature or provision of the Constitution *the power* to adopt such an ordinance and to establish the policy expressed therein *may be granted* to the city but whether *under the existing charter the city now has such power*.

The purpose of the ordinance clearly and unmistakably is to prohibit the city manager and the city council from fixing and approving salaries of patrolmen below the minimum. The powers of both the city manager and the city council are thereby to be governed and controlled by an ordinance which "shall not be repealed or amended except by a vote of the people," there being no express provision otherwise in the ordinance. *Chapter, Art. III, Sec. 10.*

If the proposed ordinance is valid, it would be equally proper by ordinance to amend the charter provision in Article VI, Sec. 5, *supra,* by adding a clause to this effect: "provided, however, that the city manager shall not fix and the city council shall not approve salaries of patrolmen below the minimum wages fixed by ordinance." The ordinance is without value unless it has the force and effect of such an amendment.

There must of necessity exist the power and authority at some point to fix and approve salaries. The principle that, subject to applicable constitutional provision, this power is in the Legislature and may be exercised within the municipality only to the extent granted by the Legislature is well illustrated by legislative acts affecting the City of Lewiston.

In 1917 the Legislature established a police commission, appointed by the governor, and established the salaries of patrolmen. In 1939 the salaries of the patrolmen were again fixed by the charter. In 1945 the appointment of the police commission was placed in the mayor, and in 1947 it was provided that the salaries of patrolmen be fixed by the police commission subject to approval of the board of finance.. *P. & S. L., 1917, Chap. 37; P. & S. L., 1939, Chap. 8; P. & S. L., 1945, Chap. 131; P. & S. L., 1947, Chap. 113.* See also *Lemaire* v. *Crockett,* 116 Me. 263, 101 A. 302 (1917). In Portland the distribution of such authority is found in the charter and not elsewhere.

There is much more at stake in the present case than the limited issue of the power by ordinance to fix and approve minimum wages and maximum hours of employment for patrolmen. If the charter, in effect, can be amended by the proposed ordinance, where then does the power to change and alter the government of Portland by act of city council or the people under the initiative end? The answer lies in the application of the principle that there can be no beginning of such a process of change in government by charter.

The proposed ordinance, if adopted, would be void. It is not a proper matter for submission to the voters.

Accordingly, the peremptory writ of mandamus will not issue. The demurrer of the relators is overruled. The petition for mandamus is dismissed without costs.

*So Ordered*