STATE OF MAINE  
CUMBERLAND, ss.

SUPERIOR COURT  
CIVIL ACTION  
NO. AP-17-0006

BRUNSWICK CITIZENS FOR )
COLLABORATIVE )
GOVERNMENT, ROBERT )
BASKETT, AND SOXNA DICE )
)
        Plaintiffs, )
)
v. )
)
TOWN OF BRUNSWICK )
)
        Defendant. )

ORDER ON RULE 80B APPEAL  
AND DECLARATORY RELIEF

STATE OF MAINE  
Cumberland, ss. Clerk's Office  
AUG 07 2017  
10:37AM  
RECEIVED

Plaintiffs appeal from a decision by Defendant's, Council of the Town of Brunswick's ("Council's") decision not to hold a public hearing on a proposed ordinance, pursuant to Maine Rule of Civil Procedure 80B. Plaintiffs have also brought a declaratory judgment claim for which they seek summary judgment.

Based on the following, the appeal is denied as moot. The court grants in part and denies in part summary judgment on the claim for declaratory relief.

I.    Background

At a council meeting on September 19, 2016, after receiving recommendations from five committees, cost estimates, and "many" emails, and following a public discussion and question period, the Council carried a motion to sell a town-owned property. (Agreed Statement of Fact ¶ 3 Ex. B-1 59-60.) On October 17, 2016, voters requested blank petitions from the Town Clerk to begin initiative proceedings to enact a police power ordinance adding the property to the list of public parks. (Id. ¶ 7); Brunswick, Me., Charter § 1105 ("§ 1105.") On November 1, 2016, the Town Attorney issued a memorandum advising that the proposed vote was in violation of the Charter. (Id. ¶ 11 Ex. G at 5.) The Town Clerk issued the petition blanks, and on January 27, 2017,

   Plaintiffs–David Lourie, Esq.  
                          Defendant–Stephen Langsdorf, Esq.

the voters returned the petitions with sufficient signatures. (*Id.* ¶¶ 8-9.) The Council did not schedule a public hearing on the vote supported by the signed petitioners. (*Id.* ¶ 10.) Instead, at a February 6, 2017 Council meeting, a motion to put the proposed new park to a vote failed, a motion to take no further steps regarding the petitions carried, and a motion authorizing a sale of the property carried. (*Id.* ¶¶ 13, 15.)

On February 21, 2017, Plaintiffs filed a complaint containing two counts: (I) an 80B appeal of the Council's decision not to schedule a public hearing about the signed petitions; and (II) seeking a declaratory judgment of: (a) what is encompassed by the term "Police Power" in § 1105; and (b) whether an ordinance potentially having an effect contrary to a Council order can be initiated pursuant to § 1105. On March 8, 2017, Defendant answered. On April 6, 2017, the parties filed an agreed-to statement of fact. On April 7, 2017, the court ordered that Count II is subsumed by the Count I, 80B appeal, and to be addressed through the summary judgment process, where the 80B record would be treated as the summary judgment record and Plaintiffs' 80B brief would be treated as a motion for summary judgment in relation to Count II.

On June 15, 2017, the property was sold.[1]

II.    Discussion

a.    *80B appeal of the decision not to call a public hearing*

The 80B appeal seeking an order for the Council to schedule a public hearing on the signed petitions was rendered moot by the sale of the property.[2]

b.    *Summary judgment for declaratory relief*

---

[1] The statement of material facts was updated on June 22, 2017 to reflect the June 15, 2017 sale of the property.
[2] The mootness of the 80B claim, should the property sell, was conceded by Plaintiffs. (Pl's' Reply Br. 1-2.)

Summary judgment is appropriate, if based on the parties' statement of material facts and the cited record, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A. 2d 733; *Dyer v. Dep't of Transport.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "[A] fact is material if it could potentially affect the outcome of the case." *Reliance Nat'l Indem. v. Knowles Indus. Servs.*, 2005 ME 29, ¶ 7, 868 A.2d 220. A genuine issue of material fact exists where the fact finder must choose between competing versions of the truth. Id. (citing *Univ. of Me. Found. v. Fleet Bank of Me.*, 2003 ME 20, ¶ 20, 817 A.2d 871). When deciding a motion for summary judgment, the court reviews the materials in the light most favorable to the non-moving party. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821.

The party opposing a summary judgment must point to specific facts showing that a factual dispute does exist in order to avoid a summary judgment. *Watt v. Unifirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897; *Reliance Nat'l Indem.*, 2005 ME 29, ¶ 9, 868 A.2d 220. Summary judgment, when appropriate, may be rendered against the moving party. M.R. Civ. P. 56(c).

1.      The right of voters to designate parks under § 1105 Police Power Ordinances

Plaintiffs argue that Brunswick voters have the right to add to the park list in the Brunswick Code of Ordinances ("the Code") under the § 1105 police power ordinances process. (Pl's' Br. 7.) Defendant argues that the disposition of municipally owned property "would seem to fall outside of" the police powers contemplated by the Charter, and would fall "more traditionally within the executive and administrative" functions of the municipal officers, but cites neither statute nor case law to support this argument. (Def.'s Br. 9.)

The Maine Legislature has found that the economic and social well-being of the citizens of the State of Maine depends, in part, upon the location of certain

developments with respect to the natural environment, and that it is within the police power of the State to control the location of those developments to protect health, safety, and general welfare. 38 M.R.S. § 481. The courts have upheld ordinances that promote a town's interest in its unique scenic and aesthetic qualities as valid exercises of police power. *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 31, 977 A.2d 400.

Here, Brunswick's parks (and facilities) are designated as such, in a list, in the Code. (Brunswick, Me. Code Art. V., Div. 2, § 14-124.) The Council has modified this list via ordinances voted on during council meetings.[3] Nowhere in the Charter is the term "police powers" defined. *See Friends of Cong. Square Park v. City of Portland*, 2014 ME 63, ¶ 8, 91 A.3d 601. The court assumes that the Council's authority to modify the parks list is derived, generally from the grant of "home rule" by the Maine Constitution and, more specifically, under its police powers to promote Brunswick's economic, social, aesthetic, and scenic qualities. *Bird v. Old Orchard Beach*, 426 A.2d 370, 372 (Me. 1981). Where § 1105 grants voters the power to use initiative procedures to enact "police power ordinances," the court concludes that Council's authority to modify the parks list would be similarly available to the voters.

2.     The § 1105 initiative rights of voters

A.     Right to a public hearing

Plaintiffs argue that the Council did not have the discretion to refuse to schedule a public hearing. (Pl's' Br. 8-9.) Plaintiff argues that Council had no power to intervene in the initiative process due to the content of the proposed ordinance. (Pl's' Br. 19.)

---

[3] For example, the Kate Furbish Preserve was added with an ordinance decided on motion during the October 7, 2013 Town Council Meeting. Minutes of the October 7, 2013 Brunswick Town Council Meeting (http://www.brunswickme.org/wp-content/uploads/2013/11/Minutes-October-7-2013.pdf.)

A court will examine an ordinance for its plain meaning, and construe undefined or ambiguous terms "reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole." *Friends*, 2014 ME 63, ¶ 9, 91 A.3d 601 (citing *Adams v. Town of Brunswick*, 2010 ME 7, ¶ 11, 987 A.2d 502.) Each section of an ordinance will be read so as to harmonize with the entire legislative scheme of which it is a part. *Stewart v. Durham*, 451 A.2d 308, 310 (Me. 1982).

Here, § 1105(c) states that "the council *shall* call a public hearing" if a petition is signed by a certain percentage of voters and filed with the town clerk. (emphasis added.) Therefore, the court agrees with Plaintiffs that the Council did not act within its discretion in declining to schedule a public hearing.

The court notes the Council may not have been required to submit Plaintiffs' proposed ordinance for a public vote. Authority relating to voters' initiatives must be construed liberally to support citizens' rights to exercise legislative power, where the broad purpose is the encouragement of participatory democracy. *Friends*, 2014 ME 63, ¶ 9, 91 A.3d 601; *New England Tel. & Tel. Co. v. Quinn*, No. CV-86-213, 1986 Me. Super. LEXIS 140, at *12 (June 26, 1986). However, a city is not compelled to submit a proposal to voters that cannot be legally adopted. *Farris ex rel. Anderson v. Colley*, 145 Me. 95, 96, 73 A.2d 37, 38 (1950). Neither local municipalities nor voters may exercise any power or function prohibited or denied expressly or by clear implication by the constitution, the general law, or their own charter. *Bird*, 426 A.2d at 372; *Farris ex rel. Anderson v. Colley*, 145 Me. 95, 99, 73 A.2d 37, 39 (1950). Furthermore, the scope of the initiative power is exceeded if it compels or bars action by elected officials that would seriously hamper governmental functions. *Friends*, 2014 ME 63, ¶¶ 16-17, 91 A.3d 601.

The parties would have had the opportunity to make these arguments for and against proceeding with Plaintiffs' proposed ordinance, had a public hearing on the ordinance been held.

B.    Council overrule limitations on ordinances by initiative

Plaintiffs argue that their express use of the § 1105 *initiative* process exempted them from the § 1101 limitations[4] on § 1102 *referendum* procedures[5] that overrule the Council. (Pl's' Br. 9, 13, 14) (emphasis added.) Defendant argues that a § 1105 initiative is subject to § 1101 referendum limitations where it has the practical effect of overturning a Council order. (Def.'s Br. 5.)

Plaintiffs' argument stands contrary to the generally accepted doctrine that statutes should be read as a whole. *Stewart v. Durham*, 451 A.2d 308, 310 (Me. 1982). Section 1104 states that Council may act by ordinance, order, or resolve. Brunswick, Me., Charter § 1104. Section 1101 gives voters referendum power to overturn ordinances enacted by Council. Reading these provisions together, and as conceded by Plaintiffs, (Pl's' Br. 10), § 1102 voter referendum power is not available to overturn orders or resolves. However, Plaintiffs cite *Friends* to support their argument that § 1105 police powers ordinances are not similarly limited by § 1101, even where the resultant ordinance could undo a Council decision such as the sale of a municipal property. (Pl's' Br. 11-12; Pl's' Reply Br. 3); *Friends*, 2014 ME 63, ¶ 19, 91 A.3d 601. However, the Portland, Maine charter can be distinguished from the Brunswick Charter in two relevant ways. First, the Portland charter provided initiative powers for "any proposed ordinance dealing with legislative matters on municipal affairs." *Friends*, 2014 ME 63, ¶

---

[4] "The following shall be subject to overrule by *referendum*: (a) all ordinances enacted by the Town Council." Brunswick, Me., Charter § 1101; (emphasis added.)

[5] "[V]oters may begin *referendum* proceedings . . . of [an] ordinance, sought to be reconsidered." Brunswick, Me., Charter § 1102(a); (emphasis added.)

8, 91 A.3d 601 (where the court held that the creation of the park was legislative.) Second, the Portland charter had no express limitations on the use of any voter actions. (Def.'s Br. 8.)

In the alternative, Plaintiffs argue that even if § 1105 initiatives can be limited by § 1101, (Pl's' Br. 5) (presumably when an initiative and a Council order or resolve are in express conflict), the § 1101 overrule limitations did not apply to their proposed ordinance to create a park because Council never voted on whether to create a park, (Pl's' Reply Br. 3).

A city council may establish direct initiative and a people's veto. Me. Const., art. IV, pt. 3, § 21. Cities may place qualifications on or provide clarifications for their referendum process. *E.g., Albert v. Town of Fairfield*, 597 A.2d 1353, 1354 (Me. 1991) (where voters had the power to require reconsideration of any town council action, a referendum was used to reject the council's acceptance of the street); *e.g., Ripley Rd. Assocs. v. Town of Kittery*, No. CV-00-137, 2001 Me. Super. LEXIS 181, at *3-4, 2001 WL 1736574 (Aug. 3, 2001) (where voters had the power to repeal the enactment of any ordinance, the referendum process was used to repeal the town council's approval of a rezoning ordinance); *e.g., Bird*, 426 A.2d at 373 (where voters had explicit referendum power to overrule certain orders or resolves authorizing bond issues, the town's resolve to issue a bond was rejected in a subsequent election); *e.g., Friends*, 2014 ME 63, ¶ 19, 91 A.3d 601 (where the city code provided for submission to vote of proposed ordinances dealing with legislative matters, the city was ordered to issue petition forms for an initiative to amend the land bank ordinance.)

Plaintiff's argument that their initiative, in particular, was immune to the limitation of § 1101 fails for three reasons. First, it is impossible to conclude that an ordinance by initiative was not seeking the reconsideration of an order, in violation of §

1101, if its success in a popular vote would necessitate the undoing of an order. The court can envision situations where parties argue over the necessity of the undoing. Here, Plaintiffs' ordinance does not trigger that debate. On September 19, 2016, a motion to "retain" the property failed. There immediately followed a motion to sell, which carried. It was impossible to simultaneously retain the property and sell the property to a private owner. Furthermore, Plaintiff concedes that their initiative: (1) was "questioning [the Council's] decision to sell the [p]roperty"; (2) was "contrary to the will of a majority of the Council . . . and contradicted its wishes"; (3) *could have the effect of undoing a prior decision of the Council*"; (4) might not have affected Council's decision "since [it] might not have succeeded at the polls"; (5) would not have prevented Council from negotiating and agreeing to sell the property, until enacted; and (6) "would [have been] illegal" if it had been initiated as a §§ 1101, 1102 referendum. (Pl's' Br. 10, 12, 13, 14); (Pl's' Reply Br. 3.)

Second, the Council arguably did vote on whether to create a park. One of the many reports reviewed by the Council before the decision to sell the property was made, was from the Town of Brunswick Conservation Commission which specifically urged the Council to keep the property in public ownership. (Agreed Statement of Facts ¶ 3 Ex. B-1 66); (Def.'s Br. 3.) The Council subsequently voted against retaining the property and, then, in favor of selling the property.

Third, contrary to Plaintiffs' mistaken claim that their initiative did not expressly ask for a vote to "retain" the parcel, (Pl's' Reply Br. 3), in direct contraction of the Council's decision not to "retain the property,"(Agreed Statement of Fact ¶ 4 Ex. B-3 5), that is exactly what the ordinance sought. The face of the ordinance states its purpose was to "retain the town-owned parcel." (Agreed Statement of Fact ¶ 9 Ex. F 1.)

IV. Conclusion

Based on the foregoing, the court:

1. GRANTS summary judgment in favor of Plaintiffs and declares that the Council was not within its discretion to decline to hold a public hearing on their proposed ordinance after the requisite number of signed petitions was filed, and;

2. GRANTS summary judgment in favor of Defendant and declares that the voter initiative to enact the ordinance under § 1105 Enactment of Ordinances by Initiative is limited by § 1101 Power of Referendum as the proposed ordinance overrules the Council order or resolve.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: August 7, 2017

_____
Lance E. Walker
Justice, Superior Court