**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| **SMART SAND, INC.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **C.A. No. N19C-01-144** |
| | ) | **PRW CCLD** |
| **US WELL SERVICES LLC,** | ) | |
| Defendant. | ) | |

Submitted: May 7, 2021
Decided: June 1, 2021
Issued: June 11, 2021

**ORDER ON THE PARTIES' TRIAL MOTIONS TO EXCLUDE
EXPERT OPINION TESTIMONY
AND CERTAIN OTHER TESTIMONY AND EXHIBITS**

*Upon Smart Sand, Inc.'s Trial Motion to Exclude
Expert Opinion Testimony and Certain Other Testimony and Exhibits*,
**DENIED.**

*Upon US Well Services LLC's Trial Motion to Exclude
Expert Opinion Testimony and Certain Other Testimony and Exhibits*,
**DENIED, in part, and GRANTED, in part.**

This 11th day of June, 2021, upon consideration of the parties' mid- and post-trial evidentiary motions (D.I. 331, 333), their subsequent responses (D.I. 337, 341), and the complete record in this matter, it appears to the Court that:

(1)     On November 6, 2015, Smart Sand, Inc., and US Well Services LLC, entered into a Master Product Purchase Agreement (together with its amendment

executed on May 1, 2016, the "PPA") through which Smart Sand supplied frac sand to US Well.[1] The PPA required US Well to pay Smart Sand a monthly non-refundable capacity reservation charge, regardless of whether US Well actually purchased and took any frac sand (the "Reservation Charge").[2]

(2) Contemporaneously with the PPA, the parties also entered into a Railcar Usage Agreement (the "RUA" and together with the PPA, the "Agreements").[3] Under the RUA, US Well borrowed railcars from Smart Sand for the delivery of sand purchased under the PPA in exchange for a monthly fee of $650 per railcar.[4] The RUA's term continued until the termination or expiration of the PPA.[5]

---

[1] Compl. ¶¶ 3, 7, Jan. 14, 2019 (D.I. 1); First Am. Countercls. ¶ 3, Apr. 18, 2019 (D.I. 17); *see generally* Hobart M. King, *What is Frac Sand?*, GEOLOGY.COM—GEOSCIENCE NEWS AND INFORMATION, https://geology.com/articles/frac-sand/ (last visited May 27, 2021) ("'Frac sand' is a high-purity quartz sand with very durable and very round grains. It is a crush-resistant material produced for use by the petroleum industry. It is used in the hydraulic fracturing process (known as 'fracking') to produce petroleum fluids, such as oil, natural gas, and natural gas liquids from rock units that lack adequate pore space for these fluids to flow to a well.").

[2] Compl. ¶ 10.

[3] Compl. ¶¶ 3, 7; First Am. Countercls. ¶ 6.

[4] Joint Exhibit ("JX") 4 (the RUA) (D.I. 338 – letter from Seth Niederman enclosing the electronic media containing the Joint Trial Exhibits; D.I. 339 – Joint Exhibits List).

[5] *Id.*

(3)     In the fall of 2018, US Well stopped purchasing/taking sand from Smart Sand and also stopped making payments.[6]  In January 2019, US Well purported to terminate the Agreements, retroactively from September 1, 2018, claiming that Smart Sand had breached the PPA.[7]  At the time of the PPA's calculated expiration, April 30, 2020,[8] US Well had purchased 793,176.47 tons of sand, leaving a reported shortfall of 1,206,823.53 tons.[9]

(4)     On January 14, 2019, Smart Sand filed its Complaint alleging non-payment under the Agreements.[10]  US Well answered and asserted counterclaims.[11]  During the pre-trial stage of this case, the Court considered myriad motions filed by both parties.  And on December 14, 2020, a trial commenced on the factual issues left to be decided.[12]

(5)     As part of the Court's ruling on the earlier dispositive motions, it denied

---

[6]   JX-268 (Oct. 24, 2018 email correspondence re: Smart Sand Prepayment), JX-278 (Nov. 1, 2018 email correspondence re: Smart Sand Oct. Railcar Usage Invoice), JX-373 (Final Invoice).

[7]   JX-333 (Jan. 11, 2019 US Well Termination Letter).

[8]   Trial Tr., Dec. 14, 2020, at 104 (Lee Beckelman) (D.I. 347).

[9]   JX-373 (Final Invoice).

[10]   Compl.

[11]   First Am. Countercls.

[12]   Trial Worksheet, Jan. 4, 2021 (D.I. 327).

each party's respective motions *in limine* to exclude the other's expert witnesses.[13]

(6)    This Order resolves only the parties' specific remaining mid- and post-trial evidentiary cavils that could affect the Court's final trial decision and verdict.[14]

## I. SMART SAND'S MOTION TO EXCLUDE[15]

### A. SMART SAND'S MOTION TO EXCLUDE BRANDON SAVISKY'S EXPERT TESTIMONY.

(7)    Smart Sand seeks to exclude the testimony of US Well's expert, Brandon Savisky, on the grounds that his Northern White Sand projections were "not offered for any relevant purpose[,]" and therefore should be excluded under Delaware Rule of Evidence ("D.R.E.") 702.[16] Smart Sand contends that Mr. Savisky could not explain his methodology, and moreover that his projections did not account for the "grade, volume, basin, or mine location" that affect pricing.[17]

---

[13]    *Id.* (allowing the parties to raise these issues in post-trial briefing).

[14]    And so, the Court assumes any reader of this document's knowledge of the full procedural, evidentiary, and trial record developed over the life of this case. Anyone seeking a greater understanding of the underlying dispute and trial via a more fulsome factual recitation should refer to the Court's post-trial decision and verdict that is being issued simultaneously herewith.

[15]    SSI's Post-Trial Evid. Br. at 1, Jan. 29, 2021 (D.I. 333) (SSI seeks to exclude "(i) the trial testimony of Brandon Savisky, US Well's ("USW") market expert, (ii) certain opinions offered by Dana Trexler, USW's damages expert, and (iii) the draft inventory valuation report prepared by Gordon Brothers[.]").

[16]    *Id.* at 2.

[17]    *Id.* at 3-4, 6, and 8.

Further, Smart Sand claims the projections did not account for the negotiations that altered these prices.[18]

(8)    In response, US Well claims that Mr. Savisky's data is based on reliable sources used by the industry.[19]  Moreover, US Well contends that Mr. Savisky was sought and presented expert testimony to give an overview of the historic market, not compute the exact price of a specific type of frac sand at a particular time.[20]

(9)    Mr. Savisky's expert testimony provided estimated historic market prices for frac sand.  As stated by US Well, his role was not to compute data, but rather to present it.  As such, Mr. Savisky is not required to defend or explain every methodology used in every citation within his sources.  Instead, Mr. Savisky's testimony must be "based on sufficient facts or data" that "is the product of reliable principles and methods[,]" which he, the "expert has reliably applied . . . to the facts."[21]  Here, Mr. Savisky based his conclusion on data sets relied on by the industry (and Smart Sand's expert does not doubt that data's reliability[22]), his

---

[18]    *Id.* at 8.

[19]    USW's Post-Trial Evid. Resp. at 2-3, Feb. 12, 2021 (D.I. 337).

[20]    *Id.* at 1.

[21]    D.R.E. 702.

[22]    Trial Tr., Dec. 18, 2020, at 240 (Stephen Becker) (D.I. 346) ("Q: Do you believe the EIA report is unreliable because it relies on his Markit reports? A: No.").

analysis is summative (as opposed to computed), and Mr. Savisky has applied this summation of frac sand data to the specific facts of this case. The fact that Mr. Savisky's analysis doesn't account for granular detail of certain facts or data not originally generated by him, doesn't render his information wrong or unhelpful.[23] And as our Supreme Court has observed, "[a] strong preference exists" for admitting expert opinions "when they will assist the trier of fact in understanding the relevant facts or the evidence."[24] Here the Court has determined Mr. Savisky's testimony does aid such understanding.[25]

(10)   Thus, Smart Sand's Motion to Exclude Mr. Savisky's expert testimony is **DENIED.** The Court has admitted Mr. Savisky's expert testimony under Rules 702, 703,[26] and 705, considered it in light of his cross-examination and the counter

---

[23]   *State ex rel. French v. Card Compliant, LLC*, 2018 WL 4151288, at *2 (Del. Super. Ct. Aug. 29, 2018) (observing "that a rigid application of the *Daubert* factors simply cannot be engaged to determine testimonial reliability in every field of expertise.").

[24]   *Norman v. All About Women, P.A.*, 193 A.3d 726, 730 (Del. 2018) (citation omitted).

[25]   *See, e.g. Conway v. Bayhealth Med. Ctr.*, 2001 WL 337228, at *2 (Del. Super. Ct. Mar. 26, 2001) (permitting expert opinion on an industry standard, gleaned solely through conversations with other industry professionals, even though it was not a "'scientific' matter" because it was still a "'specialized' matter [that was] relevant and helpful to the fact finder."); *see also Cornell Glasgow, LLC v. LaGrange Props., LLC*, 2012 WL 6840625, at *20 (Del. Super. Ct. Dec. 7, 2012) (a trial judge enjoys broad latitude in determining whether expert testimony is both reliable and relevant).

[26]   D.R.E. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

evidence elicited,[27] and ascribed it the weight the Court found to be appropriate[28] when coming to its verdict here.

### B. SMART SAND'S MOTION TO EXCLUDE DANA TREXLER'S EXPERT TESTIMONY.

(11)    Smart Sand seeks to exclude the expert testimony of US Well's expert, Dana Trexler, claiming that it is not relevant (D.R.E. 702) and that it constitutes an "attempt to resurrect its abandoned market differential analysis reference to a new hybrid lost profits/retained sand concept[,]" which would cause unfair prejudice (D.R.E. 403).[29] Moreover, Smart Sand alleges that Ms. Trexler's $30/ton figure used to calculate the residual value of sand had not been used before trial commenced.[30]

---

[27] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (citation omitted)); *see also Perry v. Berkley,* 996 A.2d 1262, 1271 (Del. 2010)  (noting cross-examination rather than exclusion can be the proper method of examining the bases of an expert's opinion and the weight to be ascribed thereto).

[28] *See Dashiell v. State*, 154 A.2d 688, 690 (Del. 1959) (finders of fact at trial "w[ere] not bound by the expert testimony, and could accept it, reject it, or give it whatever weight they saw fit" (citation omitted)); *see also Jones v. Shisler*, 2002 WL 1038822, at *5 (Del. Super. Ct. May 16, 2002) (outlining some of the well-accepted rules for a jury's treatment of expert testimony: (1) the jury is entitled to choose between expert witness testimony; (2) the jury is free to accept or reject, in whole or in part, expert testimony offered before it and to fix its verdict upon the testimony it accepts; (3) it is within the jury's sole discretion to find one expert's testimony more credible than the other; and (4) it is also the jury's sole province to determine expert credibility as a trial witness).

[29] SSI's Post-Trial Evid. Br. at 17-19.

[30] *Id.* at 13-14. *See id.* at 18 ("Prior to trial, Trexler never presented her hybrid opinion combining Estimated Future Lost Profits with Alleged Windfall Profits. At trial, however, Trexler did just that and effectively imposed a market-mitigation approach by subtracting the estimated $30-per-ton retained sand value from Estimated Future Lost Profits.").

(12)    US Well counters that Ms. Trexler's report had indicated that sand retained value, and while her initial figures used a $37/ton figure for the value of retained sand, it was adjusted to $30/ton as a "more conservative figure" of the value of the retained sand, and more in line with the Smart Sand Chief Financial Officer's projections ($31.66 to $35.25/ton).[31]   Thus, US Well states Ms. Trexler's opinion was not new, but rather tailored to Smart Sand's own presentation.[32]

(13)    Ms. Trexler's testimony included an estimate of retained sand that was adjusted at trial to respond to Smart Sand's figures.   Her use of an adjusted number at trial does not negate the reality that her opinion had always been that sand retained value—a relevant fact if the liquidated damages called for by the parties' agreement are found to be invalid.

(14)    The Court would have given Ms. Trexler's expert testimony consideration so far as it addressed the value of retained sand.   But because the Court finds that a valid liquidated damages provision exists in the parties' agreement and operates as explained in its companion decision, the Court need not make a detailed determination on Ms. Trexler's retained-sand valuation.   Thus, Smart Sand's Motion to Exclude Ms. Trexler's expert testimony on this point is **DENIED** as moot.

---

[31]   USW's Post-Trial Evid. Resp. at 11.

[32]   *Id.* at 14.

### C. SMART SAND'S MOTION TO EXCLUDE THE GORDON BROTHERS REPORT.

(15)   Third, Smart Sand seeks to exclude the Gordon Brothers Report as inadmissible hearsay under D.R.E. 801 and 802.[33]  Smart Sand states there are a number of assumptions in the report, and that the report "provides no factual predicate for [Ms.] Trexler's opinion that [Smart Sand] could have or would have sold the sand inventory [US Well] failed to take under the PPA."[34]

(16)   US Well contends the Gordon Brothers Report is not inadmissible hearsay as it is a statement by a party opponent.[35]  That is, Gordon Brothers was hired by Smart Sand to prepare this report.[36]  Moreover, US Well claims that even if the Gordon Brothers Report was inadmissible, Ms. Trexler could still rely on it.[37]

(17)   Ms. Trexler used the Gordon Brothers Report to support her expert testimony.[38]  While the report itself may be inadmissible hearsay, an expert witness

---

[33]   SSI's Post-Trial Evid. Br. at 20.

[34]   *Id.* at 25.

[35]   USW's Post-trial Evid. Resp. at 14.

[36]   *Id.* at 14-15.

[37]   *Id.*

[38]   Trial Tr., Dec. 18, 2020, at 114-15 (Dana Trexler) (testifying to her reliance on the Gordon Brothers Report).

can rely on that which would otherwise be hearsay.[39]  So, while the unfettered admission of the Gordon Brothers Report itself may not be allowed, Ms. Trexler certainly could rely on it when coming to her expert opinion.[40]  And the Court, being well-versed in the permissible use of any of the report's contents that were mentioned, considered those contents only in manner allowed by our evidentiary rules when rendering its verdict.[41]

(18)  Thus, Smart Sand's motion to wholly "exclude" the Gordon Brothers Report is **DENIED.**

---

[39]  *See* D.R.E. 703 (providing that facts or data used by an expert to form an opinion "need not be admissible for the opinion to be admitted.").

[40]  *See, e.g.*, *Brandt v. Rokeby Realty Co.*, 2005 WL 1654362, at *4-5 (Del. Super. Ct. May 9, 2005) (finding expert's reliance on inadmissible hearsay evidence is limited by Rule 703's requirement that it also be reasonably relied upon by others in the field).

[41]  *See, e.g., id.* at *5 ("An expert may not, however, rely on hearsay evidence alone to substantively prove the truth of his statement or opinion. If the expert is merely acting as a mouthpiece or conduit for another's opinions or statements, he cannot be said to be acting in his capacity as an expert in the matter and the hearsay evidence is inadmissible."); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) ("The expert may not . . . simply transmit . . . hearsay to the jury." (citation omitted)); *see also Gannett Co., Inc. v. Kanaga*, 750 A.2d 1174, 1187-89 (Del. 2000) (cautioning against allowing experts to bring in "back-door" hearsay and finding "[i]nadmissible facts that form the basis for an expert's opinion are not simply elements of proof subject to the jury's 'weighing' option" (citations and footnotes omitted)).

## II. US WELL'S MOTION TO EXCLUDE[42]

### A. US WELL'S MOTION TO EXCLUDE STEPHEN BECKER'S REBUTTAL TESTIMONY.

(19)    US Well seeks to exclude Stephen Becker's rebuttal testimony.[43] US Well argues that Smart Sand, in its rebuttal, "improperly attempted to introduce new damage models that were not in rebuttal to any evidence offered by US Well at trial."[44]    US Well complains that this particular expert opinion was not timely disclosed under the Court's case management order.[45]  And lastly, US Well says that Dr. Becker failed to reference the applicable contract/market price differential, which, according to US Well, are the damages available under Uniform Commercial Code ("UCC") section 2-708(1).[46]  Thus, in US Well's view, this testimony on lost profits given by Dr. Becker is irrelevant.[47]

(20)    Smart Sand counters that since US Well and Ms. Trexler opened the door to the validity of the liquidated damages provision, Smart Sand was able to

---

[42]    USW's Post-Trial Evid. Br. at 1, 11, 13, 15, Jan. 29, 2021 (D.I. 331).

[43]    *Id.* at 1.

[44]    *Id.* at 2.

[45]    *Id.*

[46]    *Id.* at 6-7.

[47]    *Id.* at 1, 6.

respond and show evidence of actual damages.[48]  Additionally, Smart Sand contends

that:  (a) the UCC has no bearing on damages; and (b) it is a lost volume seller.[49]

So, says Smart Sand, if the liquidated damages provision is found to be invalid, then

it is entitled to lost profits.[50]  And because Dr. Becker measured lost profits, his

testimony was relevant.[51]

(21)   Bound by reasonable limitations, a party should be allowed to introduce

previously omitted testimony or evidence needed to correct an "erroneous inference"

created by its opponent.[52]   Here, Dr. Becker's testimony on rebuttal was both

relevant and intended to correct an allegedly erroneous inference created by US

Well.

(22)   And the Court would have given Smart Sand's rebuttal testimony

---

[48]   SSI's Post-Trial Evid. Resp. Br., at 6, 7, Feb. 12, 2021 (D.I. 341) ("Here, because USW challenged the validity of the PPA's $40-per-ton liquidated damages, Dr. Becker's rebuttal opinions were necessary and proper.").

[49]   *Id.* at 10.

[50]   *Id.*

[51]   *Id.*

[52]   *See Doran v. State*, 606 A.2d 743, 747 (Del. 1992) (observing that even evidence expressly excluded by Court order from a party's case-in-chief might become admissible in rebuttal for the limited purpose of countering the opponent's defensive evidence); *see also Condon v. State*, 597 A.2d 7, 12 (Del. 1991) ("Through its cross-examination the defense had created false impressions concerning the detective's professional judgment and the victim's credibility. The defense had therefore opened the door to a curative explanation on re-direct examination and the court correctly limited the additional testimony to only correcting the false impressions." (citations omitted)).

consideration so far as it addressed that allegedly incorrect inference. But as the Court now finds that a valid liquidated damages provision exists in the parties' agreement and operates as explained in its companion decision, it need ascribe no particular weight to that rebuttal evidence. Accordingly, US Well's motion to exclude Smart Sand's rebuttal testimony by Dr. Becker is **DENIED** as moot.

### B. US WELL'S MOTION TO EXCLUDE TESTIMONY AND EXHIBITS CONCERNING THE MATLIN TRANSACTION.

(23) US Well seeks to exclude the testimony and exhibits concerning the merger of US Well's parent company and Matlin & Partners Acquisition Corporation.[53] US Well says that testimony and those exhibits related to the merger should be excluded under D.R.E. 402, as they are irrelevant, in part because the transaction closed before the litigation issue arose.[54]

(24) A trial judge sitting alone to make legal determinations and "as a trier of fact, is presumed to have made his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible."[55] That judge also "is presumed to have the capability to attribute the proper weight to the evidence and to

---

[53] USW's Post-Trial Evid. Br. at 11.

[54] *Id.*

[55] *Burke v. State*, 1997 WL 139813, at *2 (Del. Mar. 2, 1997) (internal quotation marks and citation omitted).

disregard evidence that is [immaterial or] unreliable."[56] Even so, it can be beneficial to the parties—when a specific evidentiary question is posed—for the Court to clarify its use or disregard of certain contested evidence.

(25)   Again, as the Court now finds that a valid liquidated damages provision exists in the parties' agreement, the resolution of that contractual language itself renders the proffered evidence of the Matlin Transaction of no consequence in determining this action.[57]  And so, while of no particular aid to US Well in the end, its motion to exclude the testimony and exhibits concerning the Matlin Transaction is **GRANTED.**[58]

### C. US WELL'S MOTION TO EXCLUDE EVIDENCE CONCERNING THE ALVAREZ AND MARSAL SAND ANALYSIS.

(26)   US Well seeks to exclude testimony and exhibits concerning the Alvarez and Marsal ("A&M") sand analysis on the grounds that such:  (a)  lack a proper foundation or authentication; and (b) is hearsay as it was not prepared by Smart Sand.[59]  Concerning the lack of a proper foundation, while Smart Sand sought

---

[56]   *Truman v. Watts*, 598 A.2d 713, 720 (Del. Fam. Ct. 1991).

[57]   *See* D.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

[58]   D.R.E. 402 ("Irrelevant evidence is not admissible.").

[59]   USW's Post-Trial Evid. Br. at 13-14.

to introduce the A&M analysis through US Well's former Chief Financial Officer, Matthew Bernard, "Mr. Bernard's role was limited to a conversation with A&M and [he] did not recall reviewing the information that was used to prepare the analysis."[60] Thus, US Well contends a proper foundation was not laid, as required by D.R.E. 901, and the analysis should be excluded under D.R.E. 802.[61] In short, US Well suggests that because Smart Sand did not prepare the report and it is offered for the truth of the matter asserted, it constitutes hearsay without an exception and should be excluded.[62]

(27) Smart Sand counters that Mr. Bernard laid the proper foundation by affirming he worked with A&M to "create a contract sand summary[.]"[63] Additionally, Smart Sand contends that the report: (a) is an adopted admission of US Well; and (b) in any event, it did not offer the A&M report for the truth of the matter asserted, but rather to show that US Well "worked with A&M to prepare an analysis of PPA pricing under a "Moderate Case" and an "Extreme Case" to establish

---

[60] *Id.* at 13.

[61] *Id.*

[62] *Id.* at 14.

[63] SSI's Post-Trial Evid. Resp. Br. at 20-21 (internal quotation marks omitted) (quoting Bernard Dep. 199:20-200:4).

that PPA pricing (and the WTI oil pricing on which PPA pricing is based) is highly variable and unable to be predicted with accuracy."[64]

(28)   According to Smart Sand, the introduction of the A&M analysis was to show that A&M prepared an analysis of PPA pricing under certain conditions, and the PPA pricing was highly variable.  While Smart Sand claims the report was not offered for the truth of the matter asserted, Smart Sand's position is that sand prices are highly variable, and Smart Sand confirms, in part, this is what the report shows. The report was, therefore, certainly introduced for the truth of the matter asserted.

(29)   That, however, does not end the admissibility inquiry.  As US Well confirmed that Mr. Bernard worked with A&M, his albeit limited involvement in its preparation and the credible evidence of his confirmation of the findings could support the report's admission as an adopted admission.[65]

(30)   But, while the Court could accept the A&M sand analysis testimony and exhibits as an adoptive admission, the Court has found that a valid liquidated damages provision exists in the parties' agreement, it need not and has not relied on this sand analysis when doing so.  And resultingly, the motion to exclude the testimony and exhibits concerning the A&M sand analysis is **DENIED** as moot.

---

[64]   *Id.* at 22-23.

[65]   *See* D.R.E. 801(d)(2)(B).

## D. US WELL'S MOTION TO EXCLUDE STEPHEN BECKER'S EXPERT REPORT.

(31)   US Well seeks to exclude Stephen Becker's expert report on the grounds that it "is not itself evidence and should be excluded as hearsay."[66]

(32)   Smart Sand states that while it would agree that expert reports are generally excluded, whatever the outcome on this issue, the same treatment should apply to Ms. Trexler's and Mr. Savisky's reports.[67]

(33)   While expert reports in certain situations might satisfy the requirements of one or another hearsay exception, "[e]xpert reports are generally not admissible at trial."[68]   Indeed, in the main, expert reports have no independent substantive evidentiary value but instead are oft used only to challenge the credibility of the authoring expert witness while on the stand.[69]

(34)   Just so here.   Not one expert report provided by either side was considered by the Court as an affirmative evidentiary statement of fact or used independently to resolve a legal issue in this case.   And so, US Well's motion to prevent use of Dr. Becker's expert report as affirmative evidence with substantive independent testimonial value is **DENIED** as moot.

---

[66]   USW's Post-Trial Evid. Br. at 15.

[67]   SSI's Post-Trial Evid. Resp. Br. at 23.

[68]   *Bangs v. Follin*, 2017 WL 129043, at *2 (Del. Super. Ct. Jan. 13, 2017) (citations omitted).

[69]   *See id.*

## III. CONCLUSION

(35)  For the above reasons, Smart Sand's motion to exclude Mr. Savisky's expert testimony is **DENIED**; Smart Sand's motion to exclude Ms. Trexler's expert testimony is **DENIED**; and Smart Sand's motion to preclude any use of the Gordon Brothers Report is **DENIED**.

(36)  US Well's motion to exclude Dr. Becker's rebuttal testimony is **DENIED**; US Well's motion to exclude testimony and exhibits concerning the Matlin Transaction is **GRANTED**; US Well's motion to exclude rebuttal testimony and exhibits concerning the Alvarez and Marsal sand analysis is **DENIED**; and US Well's motion to prevent use of Dr. Becker's expert report as affirmative evidence with substantive independent testimonial value is **DENIED**.

**IT IS SO ORDERED this 11th day of June, 2021.**

_____
**Paul R. Wallace, Judge**

Original to Prothonotary

cc:  Counsel via File and Serve